UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 10-231-GWU

LOIS JEAN CHASTEEN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Lois Chasteen brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disabled Widow's Insurance Benefits (DWIB) and for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The medical evidence relating to such widow's insurance benefits claims filed on or after January 1, 1991, or applications pending on or after that date, are to be evaluated under the same standards as are applied to other Title II disability claims. Omnibus Budget Reconciliation Act (OBRA) of 1990, Pub. L. No. 101-508, Section 5103. Accordingly, a review of the principles applicable to judicial review of these other claims is necessary.[1]

---

[1] Other requirements for widow's benefits were not at issue in the present case.

1

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th

Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Chasteen met the non-disability requirements for DWIB and the insured status requirements for DIB through the July 14, 2008 date of the denial decision. (Tr. 35).[2] The ALJ determined that the plaintiff suffered from chronic lumbar strain, asthma, plantar fasciitis, and major depression, but none of these conditions was found to be a "severe" impairment imposing significant work-related restrictions on her. (Tr. 36). Therefore, the claimant could not be considered totally disabled. (Tr. 39).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

Based upon the record that was before the ALJ, Chasteen was properly found not to suffer from a "severe" impairment. The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). With regard to her physical condition, Dr. Hanan Budeiri, a treating source, noted problems with ailments such as chronic bronchitis, allergies and hyperlipidemia and provided mammography and pap smear

---

[2]The plaintiff filed an application for Supplemental Security Income (SSI) at the same time as her other two applications. (Tr. 60-65). It is not clear from the court transcript if this application was denied or voluntarily dropped; however, the plaintiff has not raised the issue on appeal and it must be considered to have been waived.

screening. (Tr. 141-181). Significantly, the physician did not impose any physical restrictions upon the claimant's activities. Dr. Kenneth Hughes treated Chasteen for chest pain, sinusitis, asthma and bronchitis but also imposed no physical restrictions on the patient. (Tr. 231-235, 237-250, 341-349, 351-353, 358-362). Dr. Rajan Joshi treated the plaintiff for respiratory problems but did not report the existence of any physical restrictions. (Tr. 256-269). Dr. Stephen Nutter examined the claimant and noted an impression of chronic lumbar strain with no evidence of radiculopathy, chest pain, asthma and plantar fasciitis. (Tr. 203). The doctor imposed no functional restrictions. (Tr. 200-204). Such treating and examining sources as Dr. Gina Land (Tr. 182-184), the staff at the Central Baptist Hospital (Tr. 228-230, 356-357, 363-370), Dr. Samuel Pruden (Tr. 236, 350) and the staff at Bluegrass Cardiology (Tr. 371-377) also did not report the existence of physical limitations. Dr. Timothy Gregg reviewed the record and opined that the claimant's alleged back problems, heart problems, allergies, right foot pain, and breathing difficulties did not appear to be "severe." (Tr. 226). These reports support the administrative denial decision.

Chasteen argues that the ALJ erred in finding that her back condition and plantar fasciitis were not "severe" impairments. As noted by the plaintiff, Dr. Nutter did find positive signs of right heel pain with weight bearing and range of motion abnormalities in the lumbar spine. (Tr. 202-203). However, the doctor found no

7

tenderness, warmth, swelling, crepitus or laxity in the rest of the lower extremities. (Tr. 202). She was able to stand on one leg without difficulty. (Tr. 203). Dr. Nutter reported that straight leg raising was normal both sitting and supine. (Id.). As previously noted, the doctor imposed no physical restrictions as a result of either back problems or plantar fasciitis. (Tr. 200-204). Dr. Gregg, the medical reviewer, did not believe either condition constituted a "severe" impairment. (Tr. 226). The claimant complained of being unable to stand for more than 10 minutes at a time during the administrative hearing but she attributed this problem primarily to becoming "short-winded" due to her respiratory problems. (Tr. 408). The treatment records of Dr. Budeiri and Dr. Hughes dealt heavily (in the case of Dr. Hughes primarily) with respiratory complaints, which the ALJ also found was not a "severe" impairment. (Tr. 141-181, 231-235, 237-250, 341-349, 351-353, 358-362). Curiously, Chasteen does not dispute the ALJ's finding that her breathing problems were not a "severe" impairment. Therefore, the court finds no error.

The ALJ also properly determined that Chasteen did not suffer from a "severe" mental impairment. Dr. Robert Eardley examined the plaintiff and diagnosed major depression. (Tr. 208). Dr. Eardley did not report the existence of any mental status limitations and indicated that the claimant could make personal and social adjustments. (Id.). She would also have no limitation on understanding, remembering and carrying out instructions. (Id.). Psychologists Ann Demaree (Tr.

185) and Ed Ross (Tr. 211) each reviewed the record and opined that the claimant did not suffer from a "severe" mental impairment. While Chasteen asserts that the ALJ erred in finding that this condition was not a "severe" impairment, she offers no arguments as to why the ALJ erred. Therefore, the court finds no error.

The court notes that Chasteen submitted several additional medical records directly to the Appeals Council and the court which were never seen by the ALJ. This action raises an issue concerning a remand for the taking of new evidence before the Commissioner. Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). The statute provides that a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding. Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988). In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence. Sizemore, 865 F.2d at 711. The party seeking the remand bears the burden of showing that a remand is proper under §

405.  Willis v. Secretary of Health and Human Services, 727 F.2d 551 (6th Cir. 1984).

The medical records with which Chasteen seeks a remand of the action include treatment notes from Dr. Nuzhat Naqvi dated between August, 2008 and September, 2009 (Tr. 12-25),[3] an assessment form from Dr. Budeiri dated August, 2008 (Tr. 380-383), an assessment form from Dr. Hughes dated August, 2008 (Tr. 384-387), and an April, 2010 report from Dr. Phillip Tibbs (Docket Entry No. 6, Attachment 1).  The plaintiff asserts that the "good cause" requirement is met since these records were not in existence at the time of the denial decision on July 14, 2008.  However, the Sixth Circuit Court of Appeals in Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986) found that this was not sufficient to meet the "good cause" requirement and the claimant must still show a valid reason why this or similar evidence was not obtained and submitted into the record in a timely fashion.  In particular, Dr. Budeiri and Dr. Hughes were physicians who saw the claimant during the relevant time period and the court sees no reason why they could not have been asked to address the issue of her functional limitations in a timely manner.  With regard to the issue of "materiality," the reports from Dr. Tibbs are dated well after the ALJ's denial decision and do not appear to

---

[3]The plaintiff also submitted Dr. Naqvi's reports to the court.  (Docket Entry No. 6, Attachment 2).

"relate back" to the pertinent time period.  This is largely true of Dr. Naqvi as well who also did not impose any functional restrictions.   This leaves the assessments of Dr. Budeiri and Dr. Hughes which even if "material" do not meet the "good cause" requirement.  Therefore, the claimant has failed prove that a remand for the taking of new evidence is appropriate.

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of March, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**